UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

\* \* \* \* \* \*

| | |
|---|---|
| CLAUDINE NZIGIRE CHIGANGU, )<br>a.k.a. Claudine NDusha )<br>)<br>   Plaintiff, )<br>)<br>   v. )<br>)<br>SIFA NDUSHA, )<br>)<br>)<br>   Defendant. ) | Case No. 5:14-cv-00062-WOB |

**BRIEF ON DAMAGES IN SUPPORT OF
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

  Plaintiff, Claudine Nzigire Chigangu, a.k.a. Claudine NDusha ("Plaintiff"), by counsel, pursuant to Federal Rule of Civil Procedure 55(b)(2), hereby tenders the following brief on damages in support of her motion for default judgment against Defendant, Sifa NDusha ("Ms. NDusha" or "Defendant"), as requested by Order of this Court (DN 8).

**INTRODUCTION**

  As set forth in the attached Affidavit of Plaintiff, Plaintiff was trafficked by Defendant from her home in the Democratic Republic of Congo to Uganda, and then to the United States. (Affidavit, ¶¶ 1-7.) Plaintiff was forced to live as a virtual slave in the home of Defendant and work an average of eighteen (18) hours per day, cleaning, cooking, and taking care of Defendant's children, without pay. (*Id*. at ¶¶ 8-9, 15.) Additionally, Defendant controlled and exercised complete dominion over Plaintiff's food stamp card and cash benefits that Plaintiff was entitled to through the Kentucky Refugee Ministries Program. (*Id*. at ¶¶ 10-12.) Defendant additionally forced Plaintiff to turn over all of her wages from her work at the Griffin Gate

Marriot Hotel in Lexington. (Id. at ¶ 17-18.) Due to Defendant's trafficking, conversion, and emotional abuse of Plaintiff, she has suffered a great amount of damages, as outlined below.

The failure of Defendant to answer any of the factual allegations stated in Plaintiff's Complaint must be interpreted by this Court as an admission that all of these allegations are true, for when a default is entered, "facts alleged in the complaint may not be contested." *Webb v. District of Columbia*, 146 F.3d 964, 977 & n.26 (D.C. Cir 1998) (quoting *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)); Fed. R. Civ. P. 8(d).[1]  Because the facts pled by Plaintiff are clearly sufficient to state numerous causes of action under federal and state law against Defendant, the only remaining issue for this Court to decide is the amount of damages.

Parts I through IV of this brief analyzes Plaintiff's damages that are sum certain and asks this Court to enter those damages immediately as a matter of law. By virtue of Defendant's default, the facts of this case are not in dispute. (*See* Entry of Default, DN 6.) Neither is Defendant's liability for these damages. Parts V through VI analyze those damages which are not sum certain. Therefore, pursuant to Fed. R. Civ. P. 55(b)(2), Plaintiff respectfully requests a hearing to have the amount of those damages determined by the Court.

### DAMAGES

**I.    Mandatory Restitution under 18 U.S.C. § 1593**.

Under the Fair Labor Standards Act, Plaintiff is entitled to mandatory restitution pursuant to 18 U.S.C. § 1593. "The court shall order restitution for any offense under this Chapter." 18 U.S.C. § 1593(a). The order of restitution shall direct the defendant to pay the victim the full amount of the victim's losses, and the victim's losses shall include "the value of the victim's

---

[1] Plaintiff acknowledges that Defendant has filed a motion to set aside the default judgment and requested leave to file an Answer. (DN 9). However, at the time of this filing, the Court has not ruled on Defendant's motion and the Entry of Default remains in effect.

2

labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 *et seq.*)." 18 U.S.C. § 1593(b)(2) and (3).

The minimum hourly wage under the Fair Labor Standards Act is $7.25 per hour for an employee engaged in commerce, which includes domestic service. *See* FLSA 206(a),(b) & (f). Defendant is an "employer" within the meaning of the statute, 29 U.S.C. § 206 (2004), as she is a person who acted directly or indirectly in the interest of an employer in relation to an employee. Defendant repeatedly forced Plaintiff to work for 18 hours per day. (Affidavit, ¶¶ 8-9, 17.) To "employ" under the statute means "to suffer or permit to work," 29 U.S.C. § 203(g), which undoubtedly applies to Defendant, who assigned Plaintiff a grueling regimen of work on a daily basis. *Id*. Plaintiff is an "employee" insofar as she is an individual who Defendant employed in a private capacity rather than as an employee of a government agency or authority. 29 U.S.C. § 203(e); *See also Cruz v. Toliver*, 2007 U.S. Dist. LEXIS 24468, 1-2 (W.D. Ky. Mar. 30, 2007) (human trafficking victim awarded damages for unpaid wages under FLSA when she was forced into domestic servitude).

The FLSA only establishes a floor on the wages amount that is available, not a ceiling. Under the Federal Trafficking Victims Protection Act ("TVPA"), Plaintiff is entitled to compensatory damages equal to the prevailing wage for the services she provided for Defendant. The TVPA prohibits recruitment and transportation of individuals with the knowledge that they will be subjected to involuntary servitude, commonly referred to as "human trafficking." 18 U.S.C. § 1590; e.g. *United States v. Maka*, 237 F. App'x 225, 227 (9th Cir. 2007). It also prohibits the closely related offense of inducing forced labor by "threats of serious harm," "physical restraint" or "abuse or threatened abuse of legal processes." 18 U.S.C. § 1589. Sections 1590 and 1589 function primarily as criminal prohibitions, but 18 U.S.C. § 1595 expressly creates a corresponding civil remedy for any violation, through which a victim can recover

"damages and reasonable attorneys fees." Without question, Defendant's behavior falls squarely within the realm of conduct that the TVPA was intended to prevent.[2]

Because § 1595 is still a relatively new provision, there is no case law that directly addresses the calculation of civil damages in this context. *See Smith v. Husband*, 376 F. Supp. 2d 603, 612 (ED. Va. 2005) (noting absence of case law). However, the underlying purpose of the TVPA, the eradication of modern slavery and human trafficking in the United States, clearly implicates the protection of important constitutional rights. *See* Pub. L. No. 106-386 § 102(a). There is a substantial body of federal common law governing the proper calculation of damages in suits to vindicate other Constitutionally-protected interests where Congress has not specified a particular remedy. In particular, courts have devoted significant attention to the calculation of damages in suits arising under 42 U.S.C. § 1983, e.g., *Carey v. Piphus*, 435 U.S. 247, 254-55 (1978); *Hobson v. Wilson*, 737 F.2d 1, 59 (D.C. Cir. 1984), rev'd in part on other grounds, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), and in so-called *Bivens*-actions arising directly under the Constitution.[3] *Doe v. District of Columbia*, 697 F.2d 1115, 1123 (D.C. Cir. 1983). Plaintiff submits that the constitutional interests to be vindicated in her case are similar to those at play in these other lines of precedent.

According to precedents controlling in both § 1983 and *Bivens*-actions, where, as has been established here, a plaintiff's constitutional rights have been violated, she is entitled to compensatory damages commensurate with the actual injury she suffered as a result of the violation. *Hobson*, 737 F.2d at 59; *Doe*, 697 F.2d at 1123 (citing *Carey*, 435 U.S. at 263-64).

---

[2] Plaintiff has also pled Involuntary Servitude in violation of the Thirteenth Amendment. Because the right not to be enslaved is of such fundamental importance, other federal district courts have recognized civil causes of action arising directly under the Thirteenth Amendment. *See e.g., Manliguez v. Joseph*, 226 F. Supp. 2d 377, 383-85 (E.D.N.Y. 2002); *Flood v. Kuhn*, 316 F. Supp. 271, 281 (S.D.N.Y. 1970), aff'd, 443 F. 2d. 264 (2d Cir. 1971), *aff'd*, 407 U.S. 258 (1972). The issue need not be decided here to award compensatory and punitive damages under federal tort law for violation of the Thirteenth Amendment, because Plaintiff has clearly stated valid civil claims under the TVPA, a law enacted expressly to effectuate the goal of eliminating modern slavery, see Pub. L. No. 106-386 § 102(a), and Defendant has failed to contest those claims.

[3] *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

Where the plaintiff's constitutionally-protected interest corresponds with an interest protected by tort law, that law also determines the extent of plaintiff's recovery, although common-law rules can be adapted if necessary to provide "fair compensation" to the plaintiff. *Carey*, 435 U.S. at 258. In this case, the general common law of torts does provide a "starting point" from which to calculate the damages Plaintiff is owed under the TVPA. *Hobson*, 737 F.2d at 60. According to the Restatement (Second) of Torts, one who has been "tortuously caused ... to render services" to another may recover the value of her services or her lost earnings. *See* RESTATEMENT (SECOND) TORTS § 932(a). Additional guidance regarding the most appropriate recovery is available from 18 U.S.C. §§ 1593 and 2259(b), the applicable restitution provisions.[4] Restitution for trafficking or forced labor under §§ 1593 and 2259 is calculated based on the "full amount of the victim's losses," defined to include "the *greater of* the gross income or value to the defendant of the victim's service or labor or the value of the victim's labor as guaranteed under ... the Fair Labor Standards Act." *Id*. (emphasis added). Courts interpreting this language have found that the value to the defendant of the victim's services generally equates the prevailing wage for the work the victim performed. *United States v. Calimlim*, No. 04-02-248, 2007 WL 527481, at *1 (E.D. Wis., Feb. 14, 2007).

The TVPA's restitution provisions and federal common law thus support Plaintiff's claim to recover according to the prevailing wage for the services she performed for Defendant to the extent that the prevailing wage exceeds the wages to which she was legally entitled under the FLSA. The value of Plaintiff's labor in the open market can be determined by the wage she was paid at the end of her captivity. Plaintiff's job at Crothall Healthcare paid $8.00 per hour. (*See* Wage Statement from Crothall Healthcare, attached as Exhibit 6.) Thus, although the Court is

---

[4] Although criminal restitution is distinct from civil damages, in many instances, the one functions as a "counterpart" to the other, *United States v. Sung*, 51 F.3d 92, 94 (7th Cir. 1995), and a guidepost for what constitutes an appropriate monetary calculation with respect to actual damages. *See, e.g., Stogsdill v. Healthmark Partners L.L.C.*, 377 F.3d 827, 833-34 (8th Cir. 2004); *Sung*, 51 F.3d at 94.

5

required by the FLSA to award Plaintiff wages at no less than $7.25 per hour, it should also consider awarding her wages at the fair market value of her labor, $8.00 per hour.[5]

Plaintiff worked 18 hours per day for the period from September 28, 2011 until April 28, 2012. (Affidavit, ¶¶ 8-9, 17.) During this time period, Plaintiff worked a total of 3,834 hours as a domestic servant. From April 28, 2012 until her escape on April 29, 2013, Plaintiff worked 10 hours per day for Defendant on days when she worked at the hotel and 18 hours per day when she did not work at the hotel. (Affidavit, ¶ 17, 21-22.) Thus, during this time period, Plaintiff worked a total of 4,908 hours as a domestic servant. *Id.* In total, Plaintiff therefore worked 8,742 hours for Defendant without pay.

Plaintiff is therefore entitled to restitution under 18 U.S.C. § 1593 in the amount of $63,379.50 at the minimum wage or in the alternative, $69,936.00 calculated at the Plaintiff's prevailing wage.[6] The following chart breaks down the calculation of Plaintiff's damages for unpaid wages.

| Victim's Labor | Dates | Hours | Amount at 7.25/Hour | Amount at 8.00/Hour |
|---|---|---|---|---|
| Domestic Labor | September 28, 2011 until April 28, 2012 | 3,834 | 27,796.50 | 30,672 |
| Domestic Labor | April 28, 2012 until April 29, 2013 | 4,908 | 35,583 | 39,264 |
| **Total** | **September 28, 2011 until April 29, 2013** | **8,742** | **63,379.50** | **$69,936.00** |

---

[5] Additionally, the FLSA requires employers to pay one-and-a-half normal pay for each additional overtime hour beyond a 40-hour work week. 29 U.S.C. §§ 206, 207. However, Plaintiff recognizes that domestic workers are excluded from the overtime provisions of the FLSA. Thus, Plaintiff's back wages under FLSA have been calculated using the minimum wage for all hours worked. 29 C.F.R. § 552.100(a)(2).

[6] While the FLSA permits employers to take appropriate credit for the reasonable cost or fair value of lodging and other facilities furnished to the employee by the employer, that credit may be taken "only when the employee's acceptance of them is voluntary and uncoerced." 29 C.F.R. § 552.100(b)(2) (emphasis added). Plaintiff was held as a prisoner in Defendant's home, and her acceptance of the food and lodging provided by Defendant was not voluntary.

6

## II. Liquidated Damages Under the Fair Labor Standards Act.

Plaintiff may also recover liquidated damages equal to the amount of her total unpaid wages set forth above, because Defendant's violation of the Fair Labor Standards Act was willful. *See* 29 U.S.C. § 216(b); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991). "Section 2617(a)(1)(A)(iii) of the FMLA provides that, in addition to compensatory damages specified in 2617(a)(1)(A)(i) & (ii), an employer shall be liable for an amount of liquidated damages equal to the amount of wages, salary, employment benefits, or other compensation denied or lost to an employee, plus interest, by reason of the employer's violation of 2615 of the statute." *Chandler v. Specialty Tires of Am.*, 283 F.3d 818, 827 (6th Cir. 2002) "When an employer lacks good faith and reasonable grounds for believing that its conduct did not violate the Act, a District Court must award liquidated damages." *Dole*, 942 F.2d at 967 (6th Cir. 1991). Accordingly, in addition to the damages decided under the preceding section I., Plaintiff should be awarded $69,936.00 (or in the alternative, $63,379.50 at minimum wage) as liquidated damages for Defendant's willful violation of the Fair Labor Standards Act. *See Cruz v. Toliver*, 2007 U.S. Dist. LEXIS 24468, 1-2 (W.D. Ky. Mar. 30, 2007) (human trafficking victim awarded damages for unpaid wages, including liquidated damages related to the defendants' willful violation of the Fair Labor Standards Act).

## III. Treble Damages Under KRS 337.385.[7]

Plaintiff may also be awarded treble damages under KRS 337.385. "If the court finds that the employer has subjected the employee to forced labor or services as defined in KRS

---

[7] Plaintiff recognizes that while recovery is available under both the FLSA and Kentucky law, damages for unpaid wages are not cumulative between the two claims. The Court should apply Kentucky law in assessing the amount of damages for Plaintiff's unpaid wages as the issue of damages is considered "substantive" rather than "procedural." *See Keene Corp. v. Ins. Co. of N. Amer.*, 597 F.Supp. 934, 938 (D.D.C. 1984). Under the governing choice of law rules, Kentucky has the greatest relationship to this dispute, as all of the parties reside in Kentucky, and Kentucky is where virtually all of the forced labor took place. Hence, Kentucky has the greatest relationship with this dispute and the greatest interest in the application of its law to protect Kentucky employees from forced labor practices occurring in Kentucky and committed by Kentucky residents.

529.010, the court shall award the employee punitive damages not less than three (3) times the full amount of the wages and overtime compensation due, less any amount actually paid to such employee by the employer." *See* KRS 337.385(3). "Forced labor or services" means labor or services that are performed or provided by another person and that are obtained through force, fraud, or coercion. *See* KRS 529.010(3). Defendant's fraud and coercion started when Plaintiff was forced to tell a lie about her situation, her relationship with Defendant, Plaintiff's name and date of birth. (Affidavit, ¶ 7.) Additionally, Defendant threatened Plaintiff if she did not comply. (Affidavit, ¶ 7.) Defendant's coercion continued when Defendant took Plaintiff's identification papers and withheld them from her. (Affidavit, ¶ 13.) Defendant also made verbal threats to keep Plaintiff from leaving. (Affidavit, ¶ 14.) Finally, Defendant prevented Plaintiff from having any resources and limited her contact with others to the bare minimum. (Affidavit, ¶¶ 15-16.)

Accordingly, Plaintiff should be awarded $209,808 (or in the alternative $190,138.50 at minimum wage) as treble damages.

### IV. Conversion of Property Damages.

Plaintiff is entitled to damages for the conversion of her food stamp benefits, cash benefits, and earned wages at her hotel position. Defendant's wrongful exercise of dominion and control over Plaintiff's food stamps, cash benefits, hotel wages, and identification papers constituted conversion. *See James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 826 (E.D. Ky. 2013) ("Conversion is an intentional tort that involves the wrongful exercise of dominion and control over the property of another.") (citing *St. Auto. Mutual Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. App. 1990)). "Under Kentucky law, the traditional measure of damages for the conversion of personal property is the fair market value of the property, with interest from the time of conversion." *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 600 (6th Cir. Ky. 2009) (quoting *Motors Ins. Corp. v. Singleton*, 677

8

S.W.2d 309, 314 (Ky. Ct. App. 1984); *Ins. Corp. v. Singleton*, 677 S.W.2d 309, 314 (Ky. Ct. App. 1984)).

Defendant converted Plaintiff's food stamp cards in the amount of $2,772.[8] (*See* Affidavit, ¶ 10; Kentucky Refugee Ministries and Catholic Charities of Louisville Benefits, Attached as Exhibit 4.) Defendant converted Plaintiff's cash benefits (paid by check) in the amount of $2,144.52. (*See* Affidavit, ¶ 10-12; Kentucky Refugee Ministries and Catholic Charities of Louisville Benefits, Attached as Exhibit 3.) Defendant also took Plaintiff's wages from work at the Hotel either directly or through excising dominion over an account setup for Plaintiff but controlled by the Defendant in the amount of $9,399.72. (*See* Affidavit, ¶ 17-18; Plaintiff's W2 Record from Griffin Gate Marriot Hotel, Attached as Exhibit 5.) In fact, there are criminal charges pending related to the fraudulent use of Plaintiff's bank account by Defendant. (*See* Commonwealth v. NDusha, Fayette District Court, Case No. 14-F-00367.)

Additionally, Defendant converted Plaintiff's passport, by depriving Plaintiff of the use of her passport throughout her captivity. (*See* Affidavit, ¶ 13.) In *Cruz v. Toliver*, the jury awarded a human trafficking victim $114.00 for the conversion of the plaintiff's passport, which was upheld by the Court. 2007 U.S. Dist. LEXIS 24468 (W.D. Ky. Mar. 30, 2007). Plaintiff should therefore be awarded at least $114.00 for the conversion of her passport. Thus, in total, Defendant converted $14,430.24 (2,772 + 2,144.52 + 9,399.72 + 114). Additionally, the statutory interest rate in Kentucky is 12%, compounded annually. *See* KRS § 360.040. Plaintiff should therefore be awarded 12% interest on her conversion damages from the time of conversion.

---

[8] Plaintiff acknowledges that she received a de minimis benefit related to Defendant's use of her food stamp card, as Plaintiff was permitted to eat small amounts of some of the food her food stamp card was used to purchase. Thus, if the Court should choose to discount this amount to recognize the de minimis benefit to Plaintiff, Plaintiff has no objection.

9

Further, "[w]here the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime, all but a few courts have permitted the jury to award in the tort action 'punitive' or 'exemplary' damages." *Singleton*, 677 S.W.2d at 309 (Ky. App. 1984); *See also Craig v. Bishop*, 247 S.W.3d 897, 905 (Ky. 2008) (stating that "our case law has made clear that punitive damages may be awarded for conversion if the defendant's conduct is especially reprehensible"). Defendant trafficked and enslaved Plaintiff for over one year, after forcing a lie on Plaintiff to get entry to the United States. The conversion of personal identification papers, earned wages, and refugee benefits to further the willful and knowing tracking of another human certainly "has the character of outrage frequently associated with crime," which the Court found warranted punitive damages in *Singleton*. 677 S.W.2d at 309 (finding the deliberate and intentional selling of an automobile despite knowledge that the rightful owner had been deprived of its possession and had initiated a lawsuit for its return "certainly [met] the test for punitive damages"). Plaintiff therefore asks the court as proxy for a jury to add punitive damages related to Plaintiff's conversion claim, in addition to any punitive damages awarded below.

**V.     Emotional and Punitive Damages.**

Plaintiff is entitled to emotional damages and punitive damages related to her intentional infliction of emotional distress claim and false imprisonment claims. Kentucky adopted the Restatement (Second) of Torts, § 46, requiring the following elements for a claim of intentional infliction of emotional distress: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe. *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996). Defendant's intentional trafficking

and enslavement of another human, forcing her to work 18 hours per day in the household, and stealing her refugee benefits and wages certainly rises to the level of "outrageous conduct" required under Kentucky law for an intentional infliction of emotional distress claim. *See id.*, at 67.

Additionally, Plaintiff is entitled to emotional damages related to her claim for false imprisonment. False imprisonment is "any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats or otherwise." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 288 (Ky. App. 2009) (citing *Grayson Variety Store, Inc. v. Shaffer*, 402 S.W.2d 424, 425 (Ky. 1966)). Under a false imprisonment claim, a "plaintiff is entitled to compensation for loss of time, for physical discomfort or inconvenience, and for any resulting physical illness or injury," and "[s]ince the injury is in large part a mental one, the plaintiff is also entitled to damages for mental suffering, humiliation and the like." *Banks v. Fritsch*, 39 S.W.3d 474, 478 (Ky. App. 2001).

As outlined in the attached psychiatric evaluation of Plaintiff, Plaintiff suffered severe emotional damages as a direct result of Defendant's trafficking and emotional abuse of Plaintiff, and now suffers from post traumatic stress disorder and depression. (*See* Psychiatric Evaluation of Plaintiff, Attached as Exhibit 7.) The amount of damages to compensate Plaintiff for her severe emotional damages is to be set by the Court after a hearing as set forth in Fed. R. Civ. P. 55(b)(2), as there is not a sum certain for these damages.

Additionally, Plaintiff is entitled to punitive damages pursuant to her intentional infliction of emotional distress claim, conversion claim (as set forth above), and her federal claims, because Defendant acted with "evil motive or intent," with "reckless or callous indifference" to her federally protected rights, *Smith v. Wade*, 461 U.S. 30, 56 (1983), or otherwise engaged in

11

"outrageous conduct." *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 52 (D.D.C. 2001); RESTATEMENT (SECOND) OF TORTS § 908 (1979). The focus of a punitive damages inquiry is on "the character of the tortfeasor's conduct — whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Hernandez-Tirado v. Artau*, 874 F.2d 866, 868-69 (1st Cir. 1989). Whether to award punitive damages under federal common law is in the hands of the fact-finder, whose award may only be set aside if it is "beyond all reason" or "so great as to shock the conscience," such that it violates constitutional due process. *Bolden v. J&R, Inc.*, 37 F. App'x 543, 543 (D.C. Cir. 2002) (per curiam) (quoting *Langevine*, 106 F.3d at 1024); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 583-84 (1996). Although due process itself requires some degree of proportionality between an award and the harm suffered by the plaintiff, see *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003), there is no separate federal common law standard for setting aside otherwise "excessive" awards. *Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279-80 (1989); cf *Walker v. Norris*, 917 F.2d 1449, 1459-60 (6th Cir. 1990) (amount of punitive damages committed to jury's "sound discretion").

Defendant's malicious, emotionally abusive, and criminal treatment of Plaintiff is discussed at length in the Complaint and the attached Affidavit of Plaintiff. Plaintiff submits that it was sufficiently outrageous and reprehensible to more than justify an award of punitive damages under federal law, as well as under Kentucky law. *See* e.g. *Bishop*, 247 S.W.3d at 905 ("our case law has made clear that punitive damages may be awarded for conversion if the defendant's conduct is especially reprehensible"); *Willgruber*, 920 S.W.2d 61(affirming punitive damages award for intentional infliction of emotional distress claim where an employer attempted to coerce the plaintiff to sign release papers exonerating Kroger for its wrongful discharge of the plaintiff through repeated misrepresentations to the plaintiff and pressure,

eventually leading to the plaintiff suffering a mental breakdown and being declared disabled). The size of that award is committed to this Court's discretion. Plaintiff again requests a hearing pursuant to Fed. R. Civ. P. 55(b)(2) for the Court to set that amount.

### VI.     Attorney's Fees and Costs Under 15 U.S.C. § 1595.

Plaintiff is also entitled to reasonable attorney's fees and costs as set forth in 15 U.S.C. 1595(a), 29 U.S.C. § 216(b), and KRS 337.385(3). Plaintiff therefore requests a hearing upon entry of the default judgment for damages against Defendant as set forth in this brief, in order to determine the amount of attorney's fees to be awarded to Plaintiff.

### CONCLUSION

WHEREFORE, the Plaintiff respectfully requests that a Default Judgment be entered against Defendant, Ms. NDusha, in the amount of $224,238.24, in addition to those amounts set by the Court to compensate Plaintiff for her severe emotional damages, and to serve as punitive damages.

      Respectfully submitted,

      /s/ Colin H. Lindsay
      Colin H. Lindsay
      Marisa E. Main
      Dinsmore & Shohl LLP
      101 South Fifth Street, Suite 2500
      Louisville, KY  40202
      (502) 540-2300
      (502) 585-2207 (Facsimile)
      colin.lindsay@dinsmore.com
      marisa.main@dinsmore.com

      and

      William T. Lunceford
      William T. Lunceford PLC
      2450 Moffett Road
      Independence, KY  41051
      (859) 512-4172
      william@luncefordlaw.com

      *Counsel for Plaintiff Claudine Nzigire Chigangu, a.k.a. Claudine NDusha*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May 2014, a copy of the foregoing was filed electronically and served via ECF to the appropriate counsel.

      /s/ Colin H. Lindsay
      *Counsel for Plaintiff Claudine Nzigire Chigangu, a.k.a. Claudine NDusha*